IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

JERRY STAUFFER,

                     Plaintiff,                     OPINION AND ORDER

    v.

                                                       17-cv-905-wmc

IAN CONNORS, SARA M. REVELL,
LOUIS WILLIAMS II, and RYAN WILLIS,

                     Defendants.
───────────────────────────────────────────────

    *Pro se* plaintiff Jerry Stauffer, who is a federal prisoner, has alleged that his rights were violated when defendants cancelled the prison's weekly Jehovah's Witness services. As required by 28 U.S.C. § 1915A, this court screened plaintiff's complaint, and concluded that he had adequately pled First Amendment and Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. ch. 21B § 2000bb *et seq.*, claims. (Screening Order (dkt. #11).) Defendants subsequently moved to dismiss plaintiff's complaint (dkt. #29), which the court must grant as plaintiff only seeks prospective relief, which request has been mooted by his transfer to another prison. In light of plaintiff responding that he may wish to seek monetary damages, he will be given an opportunity to expand his request for relief.

ALLEGATIONS OF FACT

    In November of 2017, plaintiff Jerry Stauffer, who was at the time incarcerated at Oxford Federal Correctional Institution ("FCI Oxford"), filed a complaint with this court against defendants Ian Connors, Sara Revell, Warden Louis Williams II, and Chaplain Ryan Willis, who at the time were all employed by the U.S. Bureau of Prisons ("BOP"). Stauffer claims that FCI Oxford's Chaplain Willis cancelled the weekly Jehovah's

Witnesses services in February of 2017, which had previously been conducted by a volunteer, Minister Ron Kniefel. According to Stauffer, Chaplain Willis originally explained that the services were cancelled because Minster Kniefel wanted an escort from the officer's station to the chapel, which was apparently unavailable. Stauffer further claims that when he told Willis that a case manager had agreed to escort Kniefel, Willis then later changed his rationale, instead informing Stauffer that the services were cancelled because he was the only inmate attending the service. Stauffer filed a request for an administrative remedy, which Warden Williams denied. BOP officials Revell and Connors then allegedly affirmed the initial determination after Stauffer appealed the warden's denial.

In addition to these allegations, defendants offer undisputed evidence that in December of 2019, plaintiff Stauffer was transferred to the Duluth Federal Prison Camp ("Duluth FPC") due to his age under BOP policy.[1] Specifically, inmates who reach the age of 70 are to be housed at a Care Level 2 facility, and while FCI Oxford is a Care Level 1 facility, Duluth FPC is a Care Level 2 facility. In plaintiff's complaint, the only relief sought was the restoration of weekly Jehovah's Witnesses services at FCI Oxford, as well as an award of costs.

OPINION

In this court's screening order, plaintiff was allowed to proceed with claims under the First Amendment Free Exercise and Establishment Clause, as well as under RFRA.

---

[1] The court understands that Stauffer is no longer at Duluth FPC and has instead entered a Residential Reentry Center.

(Screening Order (dkt. #11) 8.) While defendants moved to dismiss plaintiff's complaint on multiple grounds, because the court concludes that plaintiff's transfer to another institution has mooted his claims for prospective relief -- which is the only relief requested in plaintiff's complaint -- the court will begin and end its discussion with that issue. *See Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) ("It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action."). Nevertheless, because plaintiff has indicated in his opposition brief that he may wish to seek money damages, the court will give him the opportunity to amend his complaint to include such a request, provided he does so in the next 30 days.

Defendants argue that the court lacks subject matter jurisdiction over plaintiff's claims because Stauffer has been transferred from FCI Oxford, thereby mooting his prayers for prospective relief.[2] (Defs.' Br. (dkt. #30) 28-29.) Defendants properly bring this mootness argument as a motion to dismiss for lack of subject matter under Federal Rule 12(b)(1). *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) ("Federal courts lack subject matter jurisdiction when a case becomes moot."). Moreover, when

---

[2] Defendants seem to direct this mootness argument only at plaintiff's RFRA claim, (*see* Defs.' Br. (dkt. #30) 28 ("Plaintiff's RFRA claim is moot.")), yet this argument applies with equal force to plaintiff's First Amendment claims. *Cf.* Erwin Chemerinsky, *Federal Jurisdiction* 632 (6th ed. 2012) ("[T]he Supreme Court long has held that federal officers may be sued for injunctive relief to prevent future infringements of federal laws."). While ordinarily the court would not raise an argument neglected by a party, it has an independent obligation to consider mootness as a fundamental question of subject matter jurisdiction. *See Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986) ("[O]nce the district judge has reason to believe that there is a serious jurisdictional issue, he is obliged to resolve it before proceeding to the merits even if the defendant, whether as a matter of indolence or of strategy, does not press the issue.").

considering a motion to dismiss brought under Rule 12(b)(1), a court may properly consider evidence beyond the pleadings. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint. Rather, the plaintiff has the obligation to establish jurisdiction by competent proof, and the court may properly look to evidence beyond the pleadings in this inquiry.") (citing *Calderon v. United States*, 123 F.3d 947, 951 n.2 (7th Cir. 1997); and *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980)). Thus, in evaluating defendants' 12(b)(1) motion, the court has considered the declarations submitted by defendants with regard to plaintiff's transfer, which importantly he does not dispute in his response.

The thrust of defendants' argument is that plaintiff's transfer means that the court is now unable to grant plaintiff's only requested relief -- restoring his weekly Jehovah's Witness services at FCI Oxford. *See United States v. Segal,* 432 F.3d 767, 773 (7th Cir. 2005) ("When making a mootness determination, we consider . . . whether it is still possible to fashion *some* form of meaningful relief to the [plaintiff] in the event he prevails on the merits.") (emphasis in original). "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811

4

(7th Cir. 1996) (quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir. 1988)). This is because, where there is no realistic possibility that a prisoner will be reincarcerated at that same facility and subject to the same actions, any prospective relief would be "purely speculative in nature." *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (citing *Preiser v. Newkirk,* 422 U.S. 395, 401-04 (1975)). Moreover, "[a]llegations of a likely retransfer may not be based on mere speculation." *Higgason*, 83 F.3d at 811 (citing *Preiser,* 422 U.S. at 403).

In plaintiff's case, his transfer back to FCI Oxford is not even a remote possibility, as defendants have presented evidence that Stauffer was transferred to Duluth FPC due to his age. Moreover, under BOP policy, inmates such as Stauffer who are 70 years of age or older must be housed at a Care Level 2 facility, such as Duluth FPC, and *not* at a Care Level 1 facility, such as FCI Oxford. In response, plaintiff neither disputes any of these proffered facts, nor presents any contrary evidence, or even argues that there is some possibility that he will be transferred back to FCI Oxford, much less a realistic one.

Instead, plaintiff protests that "[t]his court has stated in the December 9, 2019 response to the Plaintiff's letter . . . that transfer does not in itself render this suit moot." (Pl.'s Opp'n (dkt. #36) 1.) This is something of an overstatement, since the court's order actually explained that a transfer *may or may not* moot a case, depending on the circumstances. (Order (dkt. #25) 2.) Regardless, the court's statement cannot itself grant continued subject matter jurisdiction over a dispute no longer properly before it.

Plaintiff alternatively argues that "the religious services of Jehovah's Witnesses should be a part of the regularly scheduled religious services at Oxford FPC regardless of

5

whether the Plaintiff is incarcerated there." (Pl.'s Opp'n (dkt. #36) 4.) However, the U.S. Constitution also "denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Finally, plaintiff contends that the timing of his transfer was "suspicious," as he had turned 70 years old in April of 2018, over one year before his transfer to Duluth FPC. (Pl.'s Opp'n (dkt. #36) 1.) However, as defendants point out, plaintiff's complaint had been filed before his seventieth birthday, and so if defendants had wanted to transfer him to moot his claim, logically they would have transferred him *sooner*, rather than waiting until December 2019. (Defs.' Reply (dkt. #37) 5.) Regardless, for purposes of mootness, defendants' motivation for transferring plaintiff is not relevant. *Cf. Wallace v. Miller*, No. 09-CV-342-JPG, 2014 WL 552885, at *10 (S.D. Ill. Feb. 12, 2014) (plaintiff's claims for injunctive relief rendered moot by transfer even though he successfully stated a claim that his transfer was retaliatory).

Considering defendants' evidence and plaintiff's response as a whole, therefore, the court is compelled to conclude that Stauffer's transfer to Duluth FPC with no realistic possibility that he will be transferred back, and his requests for prospective injunctive relief only, has rendered all of his claims moot.[3]

---

[3] As noted already, Stauffer does suggest for the first time in his opposition brief that he may ask that a "jury decide[] damages against all four Defendants." (Pl.'s Opp'n (dkt. #36) 5.) Even if plaintiff were to amend his complaint to request monetary damages properly, such claims would likely appear to be futile. As to his First Amendment claims, this court has previously declined to allow monetary damages on such a claim. *See Silva v. Ward*, No. 16-CV-185-WMC, 2019 WL 4721052, at *4 (W.D. Wis. Sept. 26, 2019) (citing cases). Although the Supreme Court recently held that damages are available on RFRA claims, they also found that qualified immunity still serves

ORDER

IT IS ORDERED that defendants' motion to dismiss (dkt. #29) plaintiff's complaint is GRANTED and that this case be DISMISSED WITHOUT PREJUDICE unless plaintiff seeks leave from this court to amend his complaint to request monetary damages against some or all of the defendants.

Entered this 1st day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

as a "'powerful shield' that 'protects all but the plainly incompetent or those who flout clearly established law.'" *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 n.2 (2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). Here, it is questionable whether plaintiff's complaint even states a violation, let alone a clearly established one. *See Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004) (holding the prison officials did not violate RLUIPA where prisoners were prohibited from congregating on certain holy days because of a lack of qualified outside volunteers to direct the gatherings); *Morris v. Debruyn*, No. 3:95-CV-227RP, 1996 WL 441860, at *9 (N.D. Ind. July 15, 1996) (ban on religious services of a particular small religious sect did not violate RFRA). *Cf. Cruz v. Beto*, 405 U.S. 319, 322, n.2 (1972) (suggesting that the First Amendment does not require prisons to provide chaplains of different faiths "without regard to the extent of the demand"). Still, plaintiff will be given 30 days to decide whether he wishes to pursue such a claim.